UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**LLOYD CASIMIRO CRUZ, Jr.**<br><br>Defendants. | Case 1:22-cr-00064-RBW<br><br>**Evidentiary Hearing Requested** |

### DEFENDANT'S MOTION TO SUPRESS EVIDENCE AND TO DISMISS DUE TO FOURTH AMENDMENT VIOLATION

COMES NOW Defendant Lloyd Casimiro Cruz, Jr, ("Cruz") by and through counsel, with this Motion to suppress evidence, and to dismiss due to the case originating with a massive violation of the Fourth Amendment. (All evidence collected following the FBI's metadata search of cellular location data was fruit of the poisonous tree, and thus this case must be dismissed.)

### I.     INTRODUCTION

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and <u>particularly describing</u> the place to be searched, and the <u>persons</u> or things to be seized" (emphasis added). Yet the entire complaint against the Defendant originated with an unlawful blanket general warrant of cellphone location data, which plainly lacked requisite specificity. Investigators then used such metadata to identify Cruz, rather than first having probable cause to identify Cruz and probable cause to believe Mr. Cruz had committed an offense, as required by the 4th amendment.

Investigators then tracked down Cruz and obtained statements from him, as well as other evidence. All of this evidence is fruit of the poisonous tree. Accordingly, this case must be dismissed *en toto.*

The Criminal Complaint in this case begins with a sworn affidavit by Sean McDermott, Special Agent of the Federal Bureau of Investigation admitting on page 3 that:

> According to records obtained through a search warrant for records in the possession of Google, a mobile device associated with [****************@g****.com was present at the U.S. Capitol on January 6, 2021. Google estimates device location using sources including GPS data and information about nearby Wi-Fi access points and Bluetooth beacons. This location data varies in its accuracy, depending on the source(s) of the data. As a result, Google assigns a "maps display radius" for each location data point. Thus, where Google estimates that its location data is accurate to within 10 meters, Google assigns a "maps display radius" of 10 meters to the location data point. Finally, Google reports that its "maps display radius" reflects the actual location of the covered device approximately 68% of the time. In this case, Google location data showed that a device associated with [************@g****.com was within the U.S. Capitol Crypt at 2:17:27 p.m. on January 6, 2021. Google records showed that the "maps display radius" for this location data was less than 100 feet, which encompasses an area that is partially within the U.S. Capitol building. Google reported a recovery telephone number ending in 5584 for [***********@g****.com.

The very next paragraph of the Criminal Complaint admits that the FBI then used the unlawfully seized metadata from the above-described general warrant to scour through another batch of metadata unlawfully seized via <u>another</u> general warrant of AT&T records:

> According to records obtained through a search warrant for records in the possession of AT&T, on January 6, 2021, in and around the time of the incident, the cellphone associated with a telephone number ending in 5584 was identified as having utilized a cell site consistent with providing service to a geographic area that included the interior of the United States Capitol building.

Then, following these two general warrants, Special Agent McDermott states that:

> Login Internet Protocol (IP) address provided by Google, and research in public records, were used to identify LLOYD CASIMIRO CRUZ, JR., residing in Polo, Missouri, as the subscriber of telephone number ending in 5584.

(All of the block quotes above are from page 3 of FBI Special Agent McDermott's Criminal Complaint.)

SO: from the admissions of the investigating special agent, we know that:

1. The FBI began its investigation into (later to be identified) Cruz, <u>without any probable cause</u> to suspect Cruz of any crime;

2. The FBI used <u>two blanket general warrants</u> (of both Google and AT&T) to scour through cell phone and other digital metadata to then identify Cruz as a <u>potential</u> suspect crime (although what crimes, if any, the FBI did not know);

3. Even after identifying Cruz as a potential suspect via these general warrants, the FBI lacked probable cause to arrest him for any specific crime;

4. The FBI then flew to Missouri to question Cruz <u>to determine if there was</u> any probable cause to charge Cruz with a crime or crimes; and

5.   Only upon questioning Cruz and getting Cruz to provide other evidence did the FBI have probable cause to charge Cruz with any crime (two misdemeanors).

The warrants in this case plainly lacked probable cause with any particularity regarding the person and things to be searched or even the crimes to be alleged. <u>Indeed, it is plain that this case was initiated by one of the worst general warrants in American history.</u> Counsel suspects that there may be other January 6 defendants who were similarly identified by these general warrants and asks the Court to utilize its inherent powers to open a more wide-ranging inquiry into the FBI's use of these unconstitutional warrants.

**Cruz requests an evidentiary hearing in which all agents responsible for these warrants shall be made to appear, testify, and provide all supporting affidavits and/or documentation.**

## II. THE METADATA SEARCH IN THIS CASE IS PRECISELY THE TYPE OF SEARCH WHICH THE FOURTH AMENDMENT WAS ENACTED TO ABOLISH.

The Fourth Amendment traces its roots to a revolt against general warrants issued by the government in England in the 1760s. Royal ministers (the equivalent of today's FBI) were in the practice of issuing warrants commanding investigators to search through London and find the identity of individuals who authored antigovernment pamphlets. Justice Potter Stewart, in *Stanford v. Texas*, 379 U.S. 476, 482 (1965), recounted this history:

> It was in the context of the latter kinds of general warrants that the battle for individual liberty and privacy was finally won - in the landmark cases of *Wilkes v. Wood*, 19 How. St. Tr. 1153 (1763). and *Entick v. Carrington*, 19 How. St. Tr. 1029 (1765). The *Wilkes* case arose out of the Crown's attempt to stifle a publication called *The North Briton*, anonymously published by John Wilkes, then a member of Parliament - particularly issue No. 45 of that journal. Lord Halifax, as Secretary of State, issued a warrant ordering four of the King's messengers "to make strict and diligent search for the authors, printers, and publishers of a seditious and treasonable paper, entitled, *The North Briton, No. 45*, . . . and them, or any of them, having found, to apprehend and seize, together with their papers." "Armed with their roving commission, they set forth in quest of unknown offenders; and unable to take evidence, listened to rumors, idle tales, and curious guesses. They held in their hands the liberty of every man whom they were pleased to suspect."

*Stanford*, 379 U.S. at 482.

British investigators scoured through the streets of London, arresting and interrogating 40 printers until one printer confessed that the author of the notorious pamphlet was a member of Parliament: John Wilkes. The general warrant outraged the people of Britain, as well as America's Founding Fathers.[1]

> In an opinion which this Court has characterized as a wellspring of the rights now protected by the Fourth Amendment, Lord Camden declared the warrant to be unlawful. "This power," he said, "so assumed by the secretary of state is an execution upon all the party's papers, in the first instance. His house is rifled; his most valuable secrets are taken out of his possession, before the paper for which he is charged is found to be criminal by any competent jurisdiction, and before he is convicted either of writing, publishing, or being concerned in the paper." *Entick v.*

---

[1] Note that the American Founding Fathers came to revere and idolize John Wilkes and Lord Camden (the British judge who invalidated the search warrants) so much that they named many American places, streets, cities, towns, and counties after them. Camden, New Jersey and Camden Yards (where the Baltimore Orioles play baseball) (on Camden Street), for example, are named for Lord Camden. Wilkes County, Georgia, Wilkes County, North Carolina, and Wilkes-Barre, Pennsylvania are named (in whole or in part) for John Wilkes.

> *Carrington.* Thereafter, the House of Commons passed two resolutions condemning general warrants . . . .

*Id.* at 484.

*Stanford v. Texas* involved a search warrant authorizing seizure of "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas, and the operations of the Communist Party in Texas." Some 2000 items were seized, most relating to petitioner's (Stanford's) mail order business. The Supreme Court held that the warrant was a general warrant forbidden by U.S. Const. amend. IV. The Court held that the indiscriminate sweep of the language of the warrant was constitutionally intolerable. "The world has greatly changed," wrote Justice Stewart, "and the voice of nonconformity now sometimes speaks a tongue which Lord Camden might find hard to understand. But the Fourth and Fourteenth Amendments guarantee to John Stanford that no official of the State shall ransack his home and seize his books and papers under the unbridled authority of a general warrant." *Id.* at 486.

Here, in the case of defendant Cruz, the warrant(s) were even more general and disconnected from particularity. The government didn't even know who they were searching for or even what specific crimes they were investigating. In application, there is little difference between a general warrant allowing "a search warrant for records in the possession of Google" of location data of all cell phones in the area of the Capitol on January 6 to identify suspects who breached the Capitol, and the general warrant in 1962 allowing investigators to search every printshop in London until they identified the printer who printed The North Britain 45.

The warrants here were general warrants by every definition. Because the two metadata warrants were general warrants in violation of the Fourth Amendment, all evidence resulting therefrom must be excluded and suppressed.

### III. ALL EVIDENCE AGAINST CRUZ COLLECTED AFTER THE TWO GENERAL WARRANTS IS FRUIT OF THE POISONOUS TREE

Evidence derived from an illegal search or seizure must be suppressed unless the government can show intervening circumstances sufficient to break the causal connection between the Fourth Amendment violation and the resulting evidence. See *Brown v. Illinois*, 422 U.S. 590, 602-03 (1975). Here there is no break in the connection whatsoever, as the FBI's identification and targeting of Cruz—and later Cruz' statements and images—led directly to all other evidence. The exclusionary rule extends to any fruits of a Fourth Amendment violation — "whether such evidence be tangible, physical material actually seized in an illegal search, items observed, or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *See United States v. Crews*, 445 U.S. 463, 470 (1980); *see also United States v. Jones*, 374 F. Supp. 2d 143, 153 (D.D.C. 2005); *United States v. Wiggins*, 211 F. Supp. 2d 81, 87-90 (D.D.C. 2002); *United States v. Henry*, 797 F. Supp. 1, 5 (D.D.C. 1992).

Defendant Cruz would not have been questioned by FBI but for the illegal general warrants executed upon Google and AT&T. Cruz' statements and all the photos and video he provided are fruit of the poisonous tree.

## IV. CONCLUSION

For all of the foregoing reasons, the evidence in this case must be suppressed; and the case against Cruz must be dismissed.

Dated: August 27, 2022     Respectfully submitted,

                                               **John Pierce Law, P.C.**

                                               By:   */s/John M. Pierce*
                                               John M. Pierce
                                               jpierce@johnpiercelaw.com
                                               21550 Oxnard St., 3rd Fl PMB 172
                                               Woodland Hills, CA 91367
                                               Telephone: (213) 349-0054

**CERTIFICATE OF SERVICE**

    I hereby certify that, on August 27, 2022, the foregoing document was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

                                        /s/ John M. Pierce
                                        John M. Pierce