UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:22-CR-64 (RBW) |
| | : | |
| LLOYD CASIMIRO CRUZ, JR., | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS

Defendant Lloyd Casimiro Cruz, Jr. alleges that the government has impermissibly prosecuted him for entering and demonstrating in the United States Capitol building on January 6, 2021, and, accordingly, seeks dismissal of all charges. ECF No. 37. Cruz's arguments lack merit, and his motion should be denied.

BACKGROUND

Cruz is charged by criminal information with one misdemeanor count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); and one misdemeanor count of parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 12.

These charges stem from Cruz's conduct within the U.S. Capitol building on January 6, 2021, as a Joint Session of Congress convened to certify the 2020 U.S. Presidential Election. The Capitol's exterior grounds were closed to the public and surrounded by law enforcement officers, barricades, and signage. ECF No. 1-1, at 1.

A large crowd of individuals had assembled around the Capitol grounds and violently disassembled and trampled metal barriers that had prominent signs reading, "AREA CLOSED By order of the United States Capitol Police Board." *See United States v. Owens*, 541 F. Supp. 3d

102, 105 (D.D.C. 2021).  Law enforcement struggled to maintain control of the growing crowd, ECF No. 1-1, at 1, as individuals forced their way through, up, and over barricades and advanced to the Capitol's exterior.  Officers then attempted to stop the crowd from entering the Capitol building.  *Id*.

Around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol building, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.  *Id*.  At 2:20 p.m., members of Congress and the Vice President evacuated the House and Senate chambers.  *Id*. at 3.  The joint session remained suspended until 8:00 p.m.  *Id*.  In the intervening period, scores of individuals entered the building without authority.  *Id*.

For his part, Cruz drove with friends to Washington D.C. on January 3, 2021, and attended President Trump's rally on January 6, 2021.  *Id*. at 2-3.  Cruz then marched down Pennsylvania Avenue to the west side of the U.S. Capitol, arriving approximately 15 minutes after President Trump's speech finished.  *Id*. at 3.  Cruz watched the crowd and observed police deploy tear gas and rubber bullets.  *Id*.  He then entered U.S. Capitol grounds and, later, the building.  *Id*. at 3-4.  Cruz used a GoPro camera to record the scene in front of him: the crowd chanting "USA" outside the U.S. Capitol building; a man breaking a window near the Senate fire door; and a person entering through that window.  *Id*. at 4-6.  As Cruz walked through the Crypt, the crowd chanted: "Stop the steal" and "Whose house? Our house."  *Id*. at 6-7.  U.S. Capitol video surveillance confirmed that Cruz entered the U.S. Capitol building at 2:11 p.m. and left at 2:21 p.m.  *Id*. at 7-9.

## ARGUMENT

Cruz seeks dismissal of the superseding information.  With respect to Count One, he contends that the U.S. Capitol was open to the public on January 6 and, therefore, not " a restricted

building" for purposes of 18 U.S.C. § 1752(a)(1).  With respect to Count Two, Cruz alleges that 40 U.S.C. § 5104(e)(2)(G), which prohibits parading, demonstrating, or picketing in a U.S. Capitol Building, violates the First Amendment.  These challenges fail.

I.      **Legal Standard**

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense."  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  The main purpose of a charging document, such as an indictment or (as here) an information, is to inform the defendant of the nature of the accusation.  *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment).  Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)).  The "key question" is whether "the allegations … , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged."  *Id*.

II.     **Count One adequately states an offense under 18 U.S.C. § 1752(a)(1).**

Section 1752(a)(1) authorizes the prosecution of any individual who "knowingly enters or remains in any restricted building or grounds without lawful authority to do so."  18 U.S.C. § 1752(a)(1).  The term "restricted buildings or grounds" refers to, among other places, "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  18 U.S.C. § 1752(c)(1)(B).  Because the U.S. Capitol building was restricted on January 6 due to the attendance of the Vice President and his family (all of whom were Secret Service protectees),

judges of this Court have recognized that the U.S. Capitol qualified as a "restricted building." *See, e.g.*, *United States v. Rodriguez*, No. 21-cr-246, 2022 WL 3910580, at *16-18 (D.D.C. Aug. 31, 2022); *United States v. Bingert*, No. 1:21-cr-91, 2022 WL 1659163, at *15-16 (D.D.C. May 25, 2022); *United States v. Puma*, No. 21-cr-454, 2022 WL 823079, at *16-19 (D.D.C. Mar. 19, 2022); *United States v. Andries*, No. 21-cr-93, 2022 WL 768684, at *16-17 (D.D.C. Mar. 14, 2022); *United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *20-22 (D.D.C. Feb. 1, 2022).

So too here. Count One alleges that, on January 6, Cruz "knowingly enter[ed] and remain[ed] in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, without lawful authority to do so." ECF No. 12, at 1. Because this count alleges each element of Section 1752(a)(1), no infirmity exists.

Cruz responds that "no law of Congress … makes the Capitol a restricted building." ECF No. 373, at 3. But, as just explained, the U.S. Capitol building qualified as a "restricted building" on January 6 under Section 1752(c)(1)(B) due to the Vice President's attendance and participation in the joint congressional session.

Cruz next insists that Congress could not "lawfully restrict the Capitol in such a way" and that he had a constitutional right to "monitor, watch, advocate, petition, and protest" the joint congressional session on January 6. ECF No. 37, at 4, 6. His conclusory assertion presumes the U.S. Capitol building's status as a public forum for public entry and expression on January 6. As explained below, however, the opposite is true; the U.S. Capitol building is a *non*-public forum and Cruz had no First Amendment right to access it. *See* pp. 5-8, *infra*; *see also U.S. Postal Service v. Greenburgh Civic Ass'n*, 453 U.S. 114, 129 (1981) ("[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government.").

Finally, Cruz references a posting on the U.S. Capitol website stating that "[t]he Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday." ECF No. 37, at 4-5. Based on that notice, Cruz asserts a subjective belief that the entire U.S. Capitol building was open and accessible on January 6.[1] Cruz is, of course, free to raise a defense at trial that he lacked knowledge that the building was restricted. But such a factual dispute is for trial; it is not an appropriate basis to seek dismissal of the charge. *See United States v. Hillie*, 227 F. Supp. 3d 57, 71 (D.D.C. 2017) (Jackson, J.) ("When testing the sufficiency of the charges in an indictment … the allegations therein must be accepted as true.") (cleaned up).

The question here is whether the superseding information adequately alleges each element of a Section 1752(a) offense. Because the answer is yes, the motion to dismiss should be denied.

**III.     Cruz's constitutional challenge to 40 U.S.C. § 5104(e)(2)(G) fails.**

Section 5104(e)(2)(G) makes it a crime to "willfully and knowingly … parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(G). Cruz contends that this statute's prohibition on such activities in the U.S. Capitol building violates the First Amendment. ECF No. 37, at 7-12. This argument lacks merit.

a.      The First Amendment principles that govern Cruz's claim are well settled. A private speaker's right to access government property for expressive activity depends on whether the government has created a forum for expression, and if so, what type of forum. "Traditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Restrictions on expression in

---

[1] Cruz did not enter the U.S. Capitol Visitor Center, but the Senate Wing Door on the northwest side of the U.S. Capitol building. ECF No. 1-1, at 8.

traditional public fora must be narrowly drawn to achieve a compelling state interest. *Id.*; *see International Soc'y for Krishna Consciousness, Inc.* v. *Lee*, 505 U.S. 672, 678 (1992) (*ISKCON*). The same test applies to designated public fora, property that the State has opened for expressive activity by part or all of the public. *Id.* For "all remaining public property," limitations on expressive activity are subject to a "much more limited review." *Id.* at 678-679. As long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view, the challenged regulation need only be reasonable. *Id.* at 679.

In examining whether a forum is public, courts look to the purpose, history, and location of the forum. *See ISKCON*, 505 U.S. at 679-680. Because the government, like other property owners, may "'preserve the property under its control for the use to which it is lawfully dedicated,' the government does not create a public forum by inaction." *Id.* (quoting *Greer v. Spock*, 424 U.S. 828, 836 (1976) (internal citation omitted)). The government also does not create a public forum "whenever members of the public are permitted freely to visit a place" that it owns or operates. *Greer*, 424 U.S. at 836. Rather, "[t]he decision to create a public forum must instead be made 'by intentionally opening a nontraditional forum for public discourse.'" *ISKCON*, 505 U.S. at 680 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)).

b. As three judges on this Court have correctly held, "the inside of the United States Capitol is a nonpublic forum for First Amendment forum analysis purposes." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.); *see also United States v. Nassif*, No. 21-cr-421 (D.D.C.) (ECF No. 42, at 8-9) (Bates, J.) (same); *United States v. Seitz*, No. 21-cr-279 (D.D.C.) (ECF No. 51, at 14) (Friedrich, J.) (same). In *Byrum*, Judge Friedman recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their

6

concerns to their legislators." 93 F. Supp. 2d at 55.  Those controls "excludes [the building's] classification as a traditional public forum." *Id*. at 56.  Judge Friedman also rejected the U.S. Capitol building's classification as a designated public forum, observing that "the inside of the Capitol is not open to meetings by the public at large" and "[t]he government has a legitimate interest in ensuring that the activities of Congress proceed without disruption." *Id*.

"As a nonpublic forum, the government may restrict First Amendment activity in the Capitol so long as the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'" *Bynum*, 93 F. Supp. 2d at 56 (quoting *Cornelius*, 473 U.S. at 806).  Section 5104(e)(2)(G) easily clears that standard.  As Judges Bates and Friedrich recently held in rejecting similar First Amendment challenges, "[t]he statute contains nothing limiting its application to a particular viewpoint" and "targets activities that Congress reasonably could have concluded would disrupt its legislative process." *Nassif*, *supra* (ECF No. 42, at 9); *see also Seitz*, *supra* (ECF No. 51, at 14) ("The statute does not discriminate based on the message of the demonstration, and by targeting noticeable public displays of multiple people, it is reasonably calculated to protect the orderly function of Congress.").  This Court should hold the same and reject Cruz's challenge.

  c. In response, Cruz asserts a First Amendment "right to petition and speak against perceived government abuses at the Capitol." ECF No. 37, at 7.  That contention fails because, as just explained, the U.S. Capitol building is a non-public forum and "there is no First Amendment right to express one's self in a nonpublic area." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016).

Cruz further cites examples where courts have reviewed regulations restricting protests or other activity on public roads and sidewalks.  ECF No. 37, at 8-10; *see, e.g.*, *Madsen v. Women's Health Center*, 512 U.S. 753, 768-770 (1994) (affirming constitutionality of 36-foot buffer zone around clinic entrances and driveway); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1036-1042

7

(7th Cir. 2002) (invalidating municipal peddling ban on public sidewalks within 1,000 feet of an arena); *Blair v. City of Evansville*, 361 F. Supp. 2d 846, 858-859 (S.D. Ind. 2005) (holding unconstitutional restriction that limited protestors to location 500 yards away from entrance to building where Vice President Cheney appeared).  Because the challenged limitations in those cases implicated expressive activity in a public forum, courts evaluated whether they were "reasonable restrictions on the time, place, or manner of protected speech," that were "narrowly tailored to serve a significant governmental interest," and "lef[t] open ample alternative channels for communication of the information."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

In this case, by contrast, the U.S. Capitol building is a non-public forum.  To pass First Amendment scrutiny, Section 5104(e)(2)(G)'s prohibition on parades, demonstrations, and picketing in the U.S. Capitol building need only be viewpoint neutral and a reasonable means of advancing the purpose of this forum: housing the legislative functions of Congress.  As Judge Friedrich correctly held in *Seitz*, Section 5104(e)(2)(G) plainly clears those minimal hurdles.

Cruz further cites the D.C. Circuit decision in *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002), classifying the U.S. Capitol front sidewalk as a public forum and invalidating a leafleting restriction at that location.  ECF No. 37, at 11.  If Section 5104(e)(2)(G) criminalized parades, demonstrations, or picketing on the sidewalk, *Lederman* might be relevant to Cruz's claim.  But because the statute applies only to "Capitol Buildings," and not to the grounds and sidewalks surrounding them, the decision is inapposite.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.

                                    Respectfully submitted,

                                    MATTHEW M. GRAVES
                                  UNITED STATES ATTORNEY
                                  D.C. Bar No. 481052

By:      /s/ Andrew J. Tesman
            Andrew J. Tessman
            Assistant United States Attorney
            WV Bar No. 13734
            District of Columbia - Detailee
            United States Attorney's Office
            601 D Street, NW
            Washington, DC 20530
            (304)-345-2200
            andrew.tessman@usdoj.gov