

**Directive**

# Retrieval of Archived Video

| | |  | |
|---|---|---|---|
| Directive #: | 1000.002 | **Effective Date:** | 02/06/2015 |
| Initiating Unit: | Security Services Bureau | **Review Date:** | 1st February |
| CALEA: | N/A | | |

# Contents

Authority and Coverage ............................................... 1
Definition(s) ............................................................ 1
General Policy ......................................................... 1
   *Requesting Archived Video Footage* ...................... 2
   *Accessing Archived Video Footage* ......................... 2
Responsibilities/Procedures .......................................... 2
   *Security Services Bureau* ........................................ 2
Additional Information .................................................. 2
Cancellation ............................................................. 2
Appendices .............................................................. 2

# Authority and Coverage

The Chief of Police is the chief executive officer of the United States Capitol Police (USCP) and is responsible for the day-to-day operation and administration of the USCP.

This policy may be revised at the discretion of the Chief of Police, consistent with applicable law, rule, and regulation.

# Definition(s)

***CP-411 Request for Copy/Review of Video Recordings.*** A form created by the USCP to document and control the request and dissemination or archived video footage.

# General Policy

The Department must maintain appropriate internal controls on the use and duplication of archived video footage to ensure the chain of custody for all copied video footage. In support of national security and legitimate law enforcement purposes, the Department adjudicates any and all requests for recorded security camera video footage to include the dissemination of footage through established channels. Prescribed law enforcement purposes for the CP-411 include: required for court, subpoena, Office of Professional Responsibility (OPR), or training, but may include any authorized investigation. This policy will identify the parties that are able to request video (USCP sworn officials or their civilian equivalent) and the role of the Security Services Bureau (SSB) and Chief of Operations (COO) in assuring that any request for disseminating archived video follows an appropriate business purpose.

The USCP was tasked by its statutory oversight committees to expand the video retrieval capabilities of the Capitol Complex. The design, installation, and maintenance of this system are delegated to the SSB. The Capitol Police Board directed that cameras would only be used for matters related to national security and legitimate law enforcement purposes (e.g., serious crimes). The COO is the sole authority for the approval of any and all requests for archived video footage, with the exception of the Office of the Inspector General (OIG) which has the ability to duplicate archived video footage for its own investigations.

In addition, this policy identifies the expectations for accessing and using video footage. This policy does not apply to the use of video as an operational aid (e.g., supporting the USCP Command Center Operations during an incident). Instead, this policy is intended to safeguard against the transfer of archival video for non-operational activities (e.g., as an aid to officers in filing reports). Video footage received through an approved request should not be delivered, copied, or transmitted to anyone other than necessary parties (e.g., court, General Counsel) without approval from the COO.

The USCP, through SSB, maintains a sophisticated closed circuit television system (CCTV) system that includes cameras strategically placed throughout the Capitol Complex to provide situational awareness to

Law Enforcement Sensitive

USCP personnel, supporting national security, and legitimate law enforcement purposes.

## Requesting Archived Video Footage

The CP-411 must be routed through the chain of command and ultimately approved by the COO. A requesting official must also have signed the signature sheet acknowledging they have received and reviewed this policy and relevant standard operating procedures. Requests for archived video footage via the CP-411 must be made at least at the level of Sergeant (or their civilian equivalent) and should be reviewed and approved by the relevant Deputy Chief (or civilian equivalent) before it is sent to the Office of the COO for official approval. The COO will forward the request to the SSB upon approval.

## Accessing Archived Video Footage

Workstations, as well as the requisite access privileges for access to archived video footage from the Video Management System (VMS), are issued by the SSB to officials (mostly at the rank of Captain and above) in the Operational Bureaus. In addition, the SSB provides access privileges to any individual in organizations that frequently require video footage for operational purposes, including the USCP Command Center, Communications, the Criminal Investigations Section, OGC, OPR, OIG, and SSB. Archived video can be used for operational activities, including supporting Command Center Operations during an incident or supporting USCP investigation. USCP personnel should not use or reference archived video in their reports which are used in court proceedings unless they have written approval from the COO.

Retrieving, using, or duplicating archived video footage in cases not related to national security or significant law enforcement operations (e.g., traffic stops, accident reporting), could expose the location of our CCTV cameras or identify our surveillance tactics. This presents a threat to national security, as making this information public could be utilized by a potential adversary.

Video footage should be used only in the prescribed manner documented in the CP-411 within the strict controls outlined in this policy. If the reason for a request or usage of the video footage changes, another CP-411 form should be completed and provided through the proper chain of command to amend the initial CP-411.

# Responsibilities/Procedures

## Security Services Bureau

SSB is responsible for the following:

1. Process an approved request and schedule a time for the requesting official to pick-up the video footage. Only the requesting official or an alternate designated in writing by the requesting official may pick up the video.

2. Assign a request tracking number to ensure accountability and proper internal controls and record all video requests and custody transfers with the assigned tracking number in an approved location. Any changes to the original request will require a new CP-411.

3. Stores video footage for 30 days per system capabilities. Officials should be aware that system maintenance or malfunctions may make video unavailable prior to the 30 days. For this reason, video retrieval requests should be made promptly. SSB will maintain an archive of any approved video footage requests.

# Additional Information

Retrieval, use, or duplication of archived video footage would not be in compliance with the intent of Congress when it established the VMS.

# Cancellation

None.

# Appendices

None.

**Kim C. Dine**
**Chief of Police**



**UNITED STATES CAPITOL POLICE**
**REQUEST FOR VIDEO RECORDINGS**

CP-411
(10/16)

**(Please Type or Print Legibly)**

| TO BE COMPLETED BY REQUESTING EMPLOYEE | | | | | |
|---|---|---|---|---|---|
| **1. TYPE OF RECORDING** | ❏ REVIEW   ❏ CD/DVD   ❏ PHOTO/SNAPSHOT | | | | |
| **2. REASON FOR REQUEST** | ❏ COURT   ❏ SUBPOENA   ❏ TRAINING   ❏ OPR   ❏ OGC/OEC<br>❏ OTHER (explain)<br>_____ | | | | |
| **3. REQUEST DATE** | | **4. DATE NEEDED** | | | |
| **4. TYPE OF EVENT** | **5. EVENT DATE AND TIME** | | **6. LOCATION OF EVENT** | | **7. CAMERAS** |
| **8. VIDEO START DATE** | | **10. VIDEO END DATE** | | | |
| **9. VIDEO START TIME** | | **11. VIDEO END TIME** | | | |
| **12. CFN** | | **13. CCN** | | | |
| **14. NAME AND UNIT OF OFFICER(S) INVOLVED** | | | **15. UNIT** | | |
| **16. REQUESTING OFFICIAL** | | | **17. UNIT** | | |
| **18. OFFICE PHONE** | | **19. CELL PHONE** | | | |
| **20. DESIGNATED ALTERNATE (PICK-UP)** | | | **21. UNIT** | | |
| **22. OFFICE PHONE** | | **23. CELL PHONE** | | | |
| CHIEF OF OPERATIONS APPROVAL | | | | | |
| **24. SIGNATURE** | | **25. PRINTED NAME** | | **26. DATE** | |
| TO BE COMPLETED BY SYSTEM OPERATIONS SECTION (SOS) | | | | | |
| **27. SIGNATURE** | | **28. PRINTED NAME** | | | |
| **29. VIDEO REQUEST TRACKING NUMBER** | | **30. DATE COMPLETED** | | | |
| TO BE COMPLETED BY EMPLOYEE RECEIVING VIDEO | | | | | |
| WARNING: UNAUTHORIZED USE, DUPLICATION OR DISSEMINATION OF INFORMATION CONTAINED ON THIS CD/DVD MAY RESULT IN APPROPRIATE ADVERSE ACTION | | | | | |
| **31. EMPLOYEE SIGNATURE** | | **32. EMPLOYEE PRINTED NAME** | | **33. DATE** | |

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| **DISTRICT OF COLUMBIA** | : | |
| | : | **Docket No.: 2018 CTF 017464** |
| v. | : | **Court Date: January 22, 2019** |
| | : | **Courtroom 116** |
| | : | |
| **RICKY WISEMAN** | : | |

## PROTECTIVE ORDER CONCERNING THE DISCLOSURE AND USE OF UNITED STATES CAPITOL POLICE SURVEILLANCE VIDEO

It is this _____ day of _____, 201_, hereby

ORDERED that Bryan Brown, attorney for the defendant be permitted to obtain a copy of the street video; and it is

FURTHER ORDERED that Bryan Brown may show the street video in court as necessary to litigate this matter and the video shall not be used for any other case or purpose; and it is

FURTHER ORDERED that Bryan Brown may only show the street video to the defendant and any investigators working on this case and shall not share the street video nor show it to any other person not directly affiliated with this case; and it is

FURTHER ORDERED that neither Bryan Brown, his investigators, nor the defendant are to reproduce, share, disseminate, nor discuss with any person not named in this Order, the depictions shown in the street video; and it is

FURTHER ORDERED that Bryan Brown must return the street video to the Office of the Attorney General after the later of a plea, trial or sentencing in the above-entitled case.

_____

Honorable Judge _____

## CERTIFICATE OF SERVICE

I hereby certify that on this _26th_ day of December, 2018, a true copy of the foregoing District of Columbia's Motion for Protective Order Concerning the Disclosure and Use of United States Capitol Police Street Video was sent electronically to Bryan Brown, counsel for the defendant.

Joshua D Karpoff

_____

JOSHUA KARPOFF
Assistant Attorney General

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **DISTRICT OF COLUMBIA** | : | |
| | : | **Docket No.: 2018 CTF 017464** |
| v. | : | **Court Date: January 22, 2019** |
| | : | **Courtroom 116** |
| | : | |
| **RICKY WISEMAN** | : | |

## DISTRICT OF COLUMBIA'S MOTION FOR PROTECTIVE ORDER CONCERNING THE DISCLOSURE AND USE OF UNITED STATES CAPITOL POLICE STREET VIDEO

The District of Columbia ("District"), by and through its attorney, the Office of the Attorney General, hereby moves for a protective order concerning the disclosure and use of United States Capitol Police ("USCP") street video. In support of its motion, the District makes the following representations:

## PROCEDURAL BACKGROUND

On November 28, 2018, the defendant was charged with Driving Under the Influence ("DUI"), in violation of D.C. Code § 50-2206.11(2014 Repl.), and Operating a Vehicle While Impaired ("OWI"), in violation of D.C. Code § 50-2206.14 (2014 Repl.). The case is set for status on January 22, 2019. On December 26, 2018, undersigned counsel received a copy of street video footage related to this case. For national security reasons, as indicated below, the District now files its motion for a protective order.

## STATEMENT OF FACTS

On November 1, 2018, at approximately 11:01 p.m., Ricky Wiseman ("defendant") was arrested for impaired driving after he was observed exiting the C-Street garage of the U.S. House of Representatives Cannon building, located at 25 Independence Avenue, S.E., Washington, D.C.

## ARGUMENT

### THE COURT HAS DISCRETION TO ISSUE THE PROTECTIVE ORDER IN THIS CASE.

The Court has discretion to issue the protective order given the parameters the

government requests. *See, e.g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219

(1979) (recognizing the need to protect confidential sources in criminal investigations); *Black v.*

*Sheraton Corp. of America*, 184 U.S. App. D.C. 46, 60-61, 564 F.2d 531, 545-46 (1977) (same).

Courts also have recognized the importance of protecting investigative techniques. *Id.* at 60-61,

564 F.2d at 545-46. *Harris v. United States*, 594 A.2d 546, 548-49 (D.C. 1991) is instructive. In

*Harris*, the Court issued a protective order to defense counsel prohibiting him from sharing a

video-taped statement with the defendant, but allowed defense to speak to the defendant

regarding the substance of the information. *Id.* The Court held that "[a] restriction on defense

counsel that prevents him from revealing what is possibly *Jencks* material does not materially

interfere with counsel's duty to advise a defendant on trial-related matters." *Id*, 594 A.2d at 549,

citing *State v. Schaeffer,* 217 Neb. 4, 6, 346 N.W.2d 701, 703 (1984) ("It is difficult to equate

denial of the right to speak to a client with a prohibition against disclosure of the contents of a

nonrelevant document..."). Furthermore, the Court found that this restriction was reasonable. It

went on to hold that "the trial court imposed the temporary restriction on defense counsel to

allow him the opportunity to review the tape before the trial court ruled on the government's

request for a protective order. The trial court's procedure enabled counsel to argue the next day

against the issuance of a protective order." *Id*, 594 A.2d at 549, relying on *United States v.*

*Eniola,* 282 U.S.App.D.C. 176, 181, 893 F.2d 383, 388 (1990) ("The essence of the sixth

amendment threshold is whether defense counsel has demonstrated that the [argued] defense has

legitimate potential such that [defense counsel] is entitled freely to discuss the strategies with his client for attempting to prove the defense. ").

Here, the release of Capitol security street videos could compromise USCP's ability to protect the Capitol. The USCP's primary mission is to police the United States Capitol Buildings and Grounds,[1] and it has the power to enforce the laws of the District of Columbia pursuant to 2 U.S.C. §1961. As part of its policing responsibilities, the USCP maintains and controls a series of video surveillance cameras throughout the Capitol Grounds. The purpose of the cameras is to assist in the maintenance of national security by detecting threats to U.S. Congressmen, their staff, and constituents, deterring and preventing terrorism, and providing for the safety and security of the Capitol Buildings and Grounds. The cameras are generally not used to collect evidence in criminal matters.

The release of security information by USCP is governed by 2 U.S.C. § 1979 (b):

Notwithstanding any other provision of law, any security information in the possession of the Capitol Police may be released by the Capitol Police to another entity, including an individual, only if the Capitol Police Board determine in consultation with other appropriate law enforcement officials, experts in security preparedness, and appropriate committees of Congress, that the release of security information will not compromise the security and safety of the Capitol buildings and grounds or any individual whose protection and safety is under the jurisdiction of the Capitol Police.

"Security information" is defined as any information that is "sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress ... and the Capitol building and grounds" which is obtained by the Capitol Police. 2 U.S.C. § 1979 (a). The locations and capabilities of the

---

[1] The streets and physical locations included in USCP's jurisdiction are outlined in 2 U.S.C. § 1967 (b).

street cameras fall under this definition of security information, as this information directly concerns the policing and protection of the Capitol grounds.

Revealing the locations and capabilities of these cameras could jeopardize USCP's mission to protect the Capitol grounds. The dissemination of information concerning the location and technical capabilities, including the ability to focus, pan, and zoom on a moving or stationary object, as well as information about the image quality will aid people who are intent on finding weaknesses in the United States' ability to protect the Capitol buildings, grounds, and individuals whose protection and safety is under the jurisdiction of the Capitol Police. In the past year the District has prosecuted hundreds of impaired driving cases brought by Capitol Police. Even assuming that many of these arrests were not caught on video and that some of the arrests occurred at the same locations, the systematic release of all of these Capitol security videos in the future would compromise the ability of USCP to protect the Capitol.

The District acknowledges that pursuant to its duty under Super Ct. Crim. R. P. 16, street video obtained by USCP may be discoverable. In *Howard v. United States*, 656 A.2d 1106, 1111 (D.C. 1995), the Court also allowed reasonable issuance of a protective order. The Court held

Before trial, the prosecutor, out of concern for his obligations under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), informed the court and defense counsel that Derrick Ross was a suspect in an unrelated armed robbery, although there was no basis for believing that Ross was aware he was under suspicion. The court ruled that this information was too attenuated to fall within the demands of *Brady*. The court issued a protective order prohibiting defense counsel from discussing this information with appellant Howard and from using it as a basis for cross-examining Ross. On appeal, Howard contends that this protective order violated his Sixth Amendment right to counsel, as well as his rights under the Confrontation Clause. We find no abuse of discretion in the court's issuance of this protective order.

*Howard*, 656 A.2d 1106, at 1111 relying on *United States v. Anderson*, 509 F.2d 724, 730 (9th Cir. 1975) ("the district court can and should, when appropriate, place defense counsel under

enforceable orders against unwarranted disclosure of the evidence that he has heard."). The government seeks to impose a similar reasonable restriction in this case. Preventing the defense from sharing the locations of these cameras does not interfere with the defendant's rights to confer with counsel or assist with his defense.

The Court should balance the public safety interest of protecting our elected officials with the defendant's right to prepare his defense by issuing a protective order that permits the defendant to prepare for trial and litigate the case but which limits the defendant, and his counsel, from reproducing the videos or using them for any reason not directly related to the litigation of this matter. Thus, the District respectfully asks this Court to issue a protective order pursuant to Super Ct. Crim. R. P. 16 (d), which would control the disclosure and use of the street camera video by the defendant and defense counsel.

A protective order is required in this case because the release of USCP security street videos could compromise USCP's ability to protect the Capitol. Therefore, the government requests that the Court order that when the defendant obtains a copy of the street video, he shall not use this video for any other case or purpose and that his defense counsel shall only be allowed to show the video to the defendant and any investigators working on the case. The government also requests that the Court order that neither defense counsel, his investigators, nor the defendant are to reproduce, share, disseminate, nor discuss with any person not named by the Court in the requested protective order, the depictions shown in the street video. This order should include that all shall be identified to the government and they shall sign a protective order to be prepared by the government which precludes the dissemination to any other person of the disclosed information; "disclosed information" includes any later acquired information derived from the initial disclosure. Finally, the government requests that the Court order that defense

counsel must return the street video to the Office of the Attorney General after the later of a plea, trial or sentencing in the above-entitled case.

This protective order would serve the security interests of USCP in protecting our elected officials while allowing the District to comply with its Rule 16 obligations.

## CONCLUSION

Based upon the foregoing facts and arguments, the District respectfully requests that this Court grant the District's motion for a protective order concerning the use, reproduction, and disclosure of the United States Capitol Police street video.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TAMAR MEEKINS
Deputy Attorney General, Public Safety Division

PETER SABA [975945]
Chief, Criminal Section

BY:     JOSHUA KARPOFF [1015629]
        Assistant Attorney General
        441 4th Street, N.W., Suite 1060N
        Washington, D.C. 20001
        PHONE: (202) 727-3398
        Joshua.Karpoff@dc.gov



**UNITED STATES CAPITOL POLICE**
**WASHINGTON, DC 20510-7218**

January 11, 2021

## Information Sharing Agreement

Officials and agents of the Metropolitan Police Department of the District of Columbia (MPD) coordinating with the United States Capitol Police (USCP) during the course of investigations related to the events of January 6, 2021 relating to the U.S. Capitol, acknowledge, understand, and agree that the USCP is a legislative branch agency and, as such, all information, to include video, audio, photographic and documentary information, shared by the USCP during these investigations, shall remain in the legal control of the USCP subject to any and all applicable release and non-disclosure requirements of Congress. Information exchanged as part of these investigations shall not be reclassified. All information originating with and provided by the USCP as part of these investigations remains the property of and under the legal control of the USCP, and if provided to MPD will be returned to the USCP at the conclusion of the investigation. This restriction does not apply to any video, audio, photographic or documentary evidence that is used as evidence or discovery as part of any prosecution of any criminal offense.

Sean P. Gallagher
Acting Assistant Chief
United States Capitol Police

Captain Carlos Heraud
Homicide Branch Commander
Metropolitan Police Department of the District of Columbia



Phone 202-224-5151

**UNITED STATES CAPITOL POLICE**
WASHINGTON, DC 20510-7218

January 10, 2021

## Information Sharing Agreement

Officials and agents of the Federal Bureau of Investigation (FBI) coordinating with the United States Capitol Police (USCP) during the course of investigations related to the events of January 6, 2021 relating to the U.S. Capitol, acknowledge, understand, and agree that the USCP is a legislative branch agency and, as such, all information, to include video, audio, photographic and documentary information, shared by the USCP during these investigations, shall remain in the legal control of the USCP subject to any and all applicable release and non-disclosure requirements of Congress. Information exchanged as part of these investigations shall not be reclassified. All information originating with and provided by the USCP as part of these investigations remains the property of and under the legal control of the USCP, and if provided to the FBI will be returned to the USCP at the conclusion of the investigation. This restriction does not apply to any video, audio, photographic or documentary evidence that is used as evidence or discovery as part of any prosecution of any criminal offense.

Sean P. Gallagher
Acting Assistant Chief
United States Capitol Police

Steven Michael D'Antuono
Assistant Director in Charge
Washington Field Office
Federal Bureau of Investigation

*Nationally Accredited by the Commission on Accreditation for Law Enforcement Agencies, Inc.*