UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| v. | : Case 1:22-cr-00064-RBW |
| | : |
| | : |
| LLOYD CASIMIRO CRUZ, JR. | : |
| | : |
| Defendant. | : |

### DEFENDANT CRUZ'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS

COMES NOW Defendant Lloyd Casimiro Cruz, Jr, ("Cruz") by and through undersigned counsel, with this Reply to the United States' Opposition to Cruz' Motion to Suppress (#40, filed 09/23/22).

The warrants at issue in this motion are, upon information and belief, the most expansive "search warrants" in American history in terms of their scope and scale. These warrants were unlawful according to every known test ever laid out by federal courts. Yet the government begins its Opposition by seeking to deflect and misdirect the Court away from the obvious general nature of the warrants which initiated the investigation against Cruz:

> Google recorded the location of a mobile device associated with Cruz's email address as inside the U.S. Capitol Crypt at 2:17 p.m. Id. at 2. Google estimates a device's location using GPS data, nearby Wi-Fi access points, and Bluetooth beacons. Id. Around this same time, a cellphone associated with Cruz connected to an AT&T cell site that serviced the U.S. Capitol building's interior. Id. Law enforcement obtained this information through search warrants. Id. The FBI identified Cruz and his residence in Polo, Missouri. Id. An agent interviewed Cruz on six occasions—four in person and two by telephone. During these voluntary meetings, Cruz admitted that he entered the U.S. Capitol building on January 6. Id. at 3-4, 10. Cruz also voluntarily gave the FBI a thumb drive containing photographs and videos from his GoPro of his trip. Id. at 3.

Government's Opposition, at 2-3.

From there, the government's Opposition dives into multiple pages of discussion of whether or not Cruz had a reasonable expectation of privacy in his cell phone communications. Finally, the government's Opposition concludes with a broad proclamation that officers in the case relied on the warrant in "good faith."

### All of these arguments are <u>immaterial and irrelevant</u>.

Cruz' motion to suppress is based on the fact that the two warrants used to identify him were unconstitutional <u>general warrants</u>. Under the Fourth Amendment, the government simply cannot initiate an investigation by using a warrant allowing them to search and seize data from every cell phone user in a million-square-foot building on a given date, citing ten possible federal crimes that may have been committed in the building by any of hundreds of people there.

A THOUGHT EXPERIMENT: SUBSTITUTE CRUZ IN 2021 FOR JOHN WILKES IN 1763

It is universally acknowledged that the Fourth Amendment was written, ratified and enacted to prohibit general warrants. See *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 669 (1995) (O'Connor, J., dissenting). The Amendment's Framers specifically acted to prohibit the government from doing what the British government did in 1763 against John Wilkes. *Boyd v. United States*, 116 U.S. 616, 625 (1886).

In 1763, the King and his ministers were so outraged by an anti-government pamphlet (The North Briton issue #45) that they commanded a search warrant to identify, find out, and arrest whomever authored the pamphlet. Investigators interrogated and searched over 40 printers and print shops before arresting John Wilkes. In every material essence, there is no difference between the 1763 general warrant to find whoever authored an antigovernment pamphlet in England and this 2021 warrant to find whoever was present at the Capitol on Jan. 6.

The *Wilkes v. Wood* case, and its associated cases, were the most famous search-and-seizure cases known to the Fourth Amendment's Framers. See Akhil Reed Amar, *Fourth Amendment First Principles*, 107 Harv. L. Rev. 757, 817 (1994). **And if anything, the 2021 general warrant in Cruz's case is more egregious than the 1763 general warrant case that sparked the 4th amendment.**

A discussion about whether Cruz had a reasonable expectation of privacy in his cell phone location might be appropriate if agents sought a warrant for Cruz's cell number or communications upon having probable cause to believe Cruz had committed a crime. See, e.g., *United States v. Ulbricht*, 858 F.3d 71 (2nd Cir. 2017). But in this case, agents simply used a search warrant to cast a net for thousands of people and find out what information came back.

Did Lord Camden ask in 1763 if the King's ministers acted in good faith? (They did, of course; but their good faith was irrelevant. They were found liable in the amount of two thousand British pounds, the equivalent of hundreds of thousands of dollars today in modern America. *Entick v Carrington*, 19 St Tr 1030 (1765) (judgment for £2000, equivalent to £392,767.18 in 2022, or $377,449.26 in the U.S.).) And the question of whether the FBI acted in good faith in the Cruz case in their execution of the general warrants of 2021 is likewise irrelevant. (Or, stated differently, no reasonable officer <u>could</u> act in good faith in the execution of such warrants, as explained below.)

**The government's general warrant is the largest in U.S. history.**

It must be remembered that the U.S. Capitol is one of America's largest public buildings, with well over 1.5 million square feet, over 600 rooms, and miles

of corridors.[1]  Thus, even geographically, the Jan. 6 warrants may cover more ground than any warrants in history.

And the warrants likely roped in data regarding more individuals than any warrant in history.  These warrants sought cell tracking data involving thousands of people.  It is certain that hundreds of these people were innocent congressional staff, Capitol staff, police staff, reporters, vendors or other persons.  And the warrants did not even pretend to know what specific alleged crimes were attached to which cell phones.  The affidavits and warrants simply listed ten (10) *possible* federal crimes according to the government's own admissions.

**The Fourth Amendment requires probable cause that a suspect committed a specific crime—not a "fair probability" that hundreds of people may have "either committed or witnessed"** *any of a half dozen* **crimes.**

The government contends that the warrants were sufficient because "the facts amply demonstrate a <u>fair probability</u> that records in Google's and AT&T's possession would identify individuals" "who <u>either committed or witnessed various federal crimes</u> that occurred within the building that day."  "Those offenses <u>included</u> assaults on federal officers (18 U.S.C. § 111), civil disorder (18 U.S.C. § 231); conspiracy (18 U.S.C. § 371); unauthorized access of a protected computer (18 U.S.C. § 1030); possession of firearms in federal facilities (18 U.S.C. § 930);

---

[1] See Architect of the Capitol, "U.S. Capitol Building," https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building (accessed 9/27/2022).

destruction of government property (18 U.S.C. § 1361); obstruction of a congressional proceeding (18 U.S.C. §§ 1505 & 1512); unlawful entry into a restricted building or grounds (18 U.S.C. § 1752(a)); rioting (18 U.S.C. § 2101); and violent or disorderly conduct within a Capitol Building (40 U.S.C. § 5104(e)(2)).

While the Constitution requires probable cause that a particular crime was committed and that a particular suspect committed that crime, these warrants spoke of a "fair probability" of identifying individuals who "either committed or witnessed" any <u>one of *ten*</u> federal crimes.

Everything seized pursuant to these warrants must be excluded. See *Cassady v. Goering*, 567 F.3d 628, 635 (10th Cir. 2009)(invalidating a warrant that "authorized the seizure of all possible evidence of any crime in any jurisdiction," in a case where officers "only had probable cause to search for evidence related to marijuana cultivation"); *United States v. George*, 975 F.2d 72 (2nd Cir. 1992) ("Nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken."); *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985) (invalidating warrant referencing a broad criminal statute but not any specific crime, and holding that no reasonably well-trained police officer could execute such a warrant).

**Not only did the warrants allow searches regarding hundreds of people; the warrants listed purported crimes <u>for which there was no</u> probable cause whatsoever regarding even a single person.**

Significantly, at least two (and possibly three) of the ten listed crimes were **purely imaginary in retrospect**. Upon information and belief, not one of the 800 identified Jan. 6 defendants are charged with "possession of firearms in federal facilities (18 U.S.C. § 930)" or "rioting (18 U.S.C. § 2101)." Undersigned counsel also knows of no Jan. 6 defendant charged with "unauthorized access of a protected computer (18 U.S.C. § 1030)." Thus some 30% of the listed <u>possible</u> crimes for which the government claimed "fair" probable cause to believe were "either committed or witnessed" at the Capitol were apparently <u>neither committed nor witnessed</u>.

**Exclusion is the appropriate remedy for a general warrant.**

There is only one remedy under the law for a general warrant: exclusion. *United States v. Christine*, 687 F.2d 749, 758 (3d Cir. 1982) ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed."). See, e.g., *United States v. Yusuf*, 461 F.3d at 393 n. 19 (whereas an overbroad warrant may be salvaged through redaction, "the only remedy for a general warrant is to suppress all evidence obtained thereby."); *United States v. Tracey*, LEXIS 49741, 2008 WL 2622908 at *3 (M.D. Pa. June 30, 2008) ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed.") (citing

*Christine*); *United States v. Fleet Management Ltd.*, 521 F. Supp. 2d 436, 445 (E.D. Pa. 2007) ("[W]e read Third Circuit precedent to prohibit the use of the good faith exception in connection with general warrants.") (citation omitted); *United States v. Kofsky*, LEXIS 64161, 2007 WL 2480971 at *15 (E.D. Pa. Aug. 28, 2007) ("[T]he only remedy for a general warrant is to suppress all evidence obtained thereby."); *United States v. Rankin*, 442 F. Supp. 2d 225, 229 (E.D. Pa. 2006) ("Evidence seized pursuant to a general warrant must be suppressed.").

### **"Good faith" cannot save the flawed warrant in this case.**

Officers *never* have "good faith" or qualified immunity to execute a general warrant. See *Cassady v. Goering*, 567 F.3d 628, 635 (10th Cir. 2009) (saying it is clearly established law that no reasonable officer would execute a general warrant).

"To determine the applicability of the good faith exception to the exclusionary rule, we ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)." But where a warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," an officer cannot "manifest objective good faith in relying on [the] warrant." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).

No reasonable officer could have executed a warrant in good faith where the warrant sought evidence regarding hundreds of individuals (many not suspected of any offense) within a 1.5-million-square-foot public building in supposed pursuit of as many as ten different federal crimes that may or may not have applied to any of the individuals.

The Ninth Circuit dealt with a similar case in *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). In *Spilotro*, the only limit on the scope of the search was that items to be seized be evidence of violation of any one of 13 federal statutes, some of exceptional scope. The Court found the warrant so facially deficient that the good faith exception was not applicable. See also *United States v. Wecht*, 619 F. Supp. 2d 213, 250 (W.D.Pa. 2009) (laptop warrant's directive to seize "all information and data" contained in a computer's hard-drive and associated storage devices was so facially overbroad as to violate the Fourth Amendment's particularity requirement and render any reliance on the warrant objectively unreasonable); *United States v. Fleet Management*, 521 F. Supp. 2d 436, 442-46 (E.D. Pa. 2007) (motion to suppress granted because warrant effectively authorized seizure of "any and all data in three computers, and the good faith exception did not apply); *United States v. Leary*, 846 F.2d 592, 606-10 (10th Cir. 1988) (absent some other limiting feature, reference in warrant to statute covering broad range of activity facially deficient and Leon inapplicable);

Further, "when the Supreme Court announced the good faith exception in *Leon*, it weakened the exclusionary rule, but it did not eviscerate it. Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Zimmerman*, 277 F.3d 426, 437-38 (3d Cir. 2002).

## CONCLUSION

The warrants used in this case to identify and find defendant Cruz were not based on particularized probable cause to believe Cruz had committed any crime. Indeed, it was only after FBI agents traveled to Missouri to question Cruz that they were able to cobble together enough information to charge Cruz with anything. The AT&T and Google warrants were general warrants by definition; and no reasonable agent could have executed them. Accordingly, all evidence seized and gathered by the warrants—and every statement and image Cruz provided afterward—must be suppressed.

ACCORDINGLY, Cruz's motion to suppress and dismiss should be granted.

Dated: October 1, 2022 /s/ John M. Pierce
John M. Pierce
John Pierce Law, P.C.
21550 Oxnard Street
3d Floor, PMB 172
Woodland Hills, CA 91367
Tel: (213) 279-7846
jpierce@johnpiercelaw.com

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on October 1, 2022, this motion and the accompany declaration was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

                                              /s/ John M. Pierce
                                              John M. Pierce