UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | **:** | |
| | **:** | |
| **v.** | **:** | Case No. 1:22-CR-64 (RBW) |
| | **:** | |
| LLOYD CASIMIRO CRUZ, JR., | **:** | |
| | **:** | |
| Defendant. | **:** | |

UNITED STATES' TRIAL BRIEF

The United States, by and through its attorney, respectfully submits this brief summarizing the government's evidence at trial and various legal issues likely to be brought before the Court.

I.      THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds when a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session and, later, the Senate proceedings. On that day, physical barriers surrounded the U.S. Capitol building and grounds.  At all relevant times, the U.S. Capitol building and its grounds—including the inaugural stage on the Lower West Terrace on the West Front—were closed to members of the public.

A large crowd of individuals had assembled around the Capitol grounds and violently disassembled and trampled metal barriers that had prominent signs reading, "AREA CLOSED By order of the United States Capitol Police Board." *See United States v. Owens*, 541 F. Supp. 3d 102, 105 (D.D.C. 2021).  Law enforcement struggled to maintain control of the growing crowd, as individuals forced their way through, up, and over barricades and advanced to the Capitol's exterior.  Officers then attempted to stop the crowd from entering the Capitol building.  *Id*. At

around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol building, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

For his part, evidence presented at trial will establish that the defendant, Lloyd Cruz, attended President Trump's rally on January 6, 2021, and then marched down Pennsylvania Avenue to the west side of the U.S. Capitol. The defendant, by his own admissions and his own GoPro footage recorded on January 6. 2021, followed a demonstration into the U.S. Capitol building. The defendant admits that he observed police deploy tear gas and rubber bullets on Capitol grounds.  He then entered U.S. Capitol grounds and, later, the building with a crowd of demonstrators chanting "USA" outside the U.S. Capitol building; he witnessed a man breaking a window near the Senate fire door and demonstrators entering through that window. The defendant entered the Capitol through the Senate wing doors, which was the site of the original breach of the U.S. Capitol building at approximately 2:12 p.m.  As the defendant walked through the Crypt, the crowd chanted: "Stop the steal" and "Whose house? Our house."  U.S. Capitol video surveillance confirmed that Cruz entered the U.S. Capitol building at approximately 2:14 p.m. and left at approximately 2:21 p.m.  Multiple open-source images and videos show Cruz in the same locations.

Based on his actions on January 6, 2021, the defendant is charged with violating Title 18, U.S.C. Section 1752(a)(1) (knowingly entering and remaining in any restricted building or grounds); and Title 40, U.S.C. Section 5104(e)(2)(G) (parading, demonstrating, or picketing in any of the Capitol Buildings).

II.     **THE GOVERNMENT'S PROOF**

With this filing, the government aims to streamline the presentation of evidence in the trial and focus the legal issues before this Court. The government intends to call approximately three primary witnesses – officers/agents with the U.S. Capitol Police, the U.S. Secret Service, and the Federal Bureau of Investigation. The government also expects to present video and photographic evidence of the defendant's actions in Washington, D.C. on January 6, and the defendant's social media posts before, during, and after January 6. This presentation will prove the charged offenses beyond a reasonable doubt.

### A.  Elements of the Crimes Alleged

The Information charges just two offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104. The United States does not object to the jury instructions promulgated by the Court prior to trial.

### B.  Compilation Exhibits About January 6, 2021 Events at the U.S. Capitol

Although the defendant is only one participant in the attack on the U.S. Capitol, evidence of the broader context of the events of the day is both relevant to and probative of the alleged offenses.

The government intends to introduce evidence through a U.S. Capitol Police Captain familiar with the Capitol Police procedures leading up to January 6, 2021, including the security measures put in place. The Captain is also familiar with the security cameras present at the U.S. Capitol building and grounds. From the videos created by those cameras on January 6, 2021, the government has developed a comprehensive exhibit covering the events of the day.

Officers with the United States Capitol Police and the Metropolitan Police Department attempted to keep the crowd away from the building, but the crowd broke through several barriers on the West Front just before 1:00 pm.  Another crowd gathered on the East Plaza of the building,

encroaching on the area where the motorcade that brought Vice President Pence to the Capitol was located.  Shortly before 2:00 p.m., the crowd on the West Front broke into the scaffolding, which was set up to construct the inauguration stage.  At 2:13 p.m., individuals in the crowd forced entry into the U.S. Capitol building itself on the West side near the Senate.  In response to this intrusion, representatives, senators, and Vice President Pence evacuated their respective chambers around 2:20 p.m.  For the next two hours, rioters flooded the building and the grounds, while police attempted to clear them out. The police finally cleared the Lower West Terrace of the Capitol at approximately 5:10 p.m.

The compilation exhibits establish how and when the disruption occurred. For Count One, the government must prove the defendant knowingly engaged in certain conduct in a restricted area.  The compilation establishes that element by showing law enforcement efforts, both before and during the breach of the restricted area, to keep unauthorized persons out of the restricted area.

### C. The Defendant's Statements

The defendant posted content relevant to his intent in the days leading up to January 6, 2021, during the commission of the offenses on that day, and after the siege of the Capitol. The defendant also made several statements during his GoPro footage on January 6, 2021, and in voluntary interviews with an FBI Special Agent during the investigation. When first approached by the FBI in its investigation, the defendant stated that he only entered Capitol grounds to help people who might have been injured in clashes with law enforcement and told the interviewing agent twice that he did not enter the Capitol building even after being expressly warned that false statements to the FBI could be a felony offense. Several months later, the defendant changed his story and told the FBI that he followed a pro-Trump demonstration to Capitol grounds and, in

fact, entered the Capitol building with his GoPro. This evidence is admissible as the non-hearsay statements of a party opponent. Fed. R. Evid. 801(d)(2)(A).

**D. The Defendant's Appearance on CCTV Footage, Body Worn Camera, and Open-Source Footage and Video from Other Rioters**

In addition to video evidence obtained from the defendant's social media, the government will also present videos from U.S. Capitol Police closed circuit camera system, and open-source videos from other people in and around the U.S. Capitol building on January 6, 2021.

*1.  U.S. Capitol Police Closed Circuit Television (CCTV)*

The defendant first appeared on CCTV footage approaching the west front of the Capitol Building at around 2:00 p.m. Shortly thereafter, CCTV depicted the defendant climbing stairs from the lower West Plaza to the upper West Terrace. At approximately 2:14 p.m., the defendant appeared on CCTV at the site of the first breach: the Senate wing doors. There, he witnessed rioters climbing through broken windows and the broken glass of the windows near the Senate wing doors. The defendant entered the Capitol through the same doors.  The defendant is on CCTV footage as he moved through the crowd to the Crypt where he encountered a police line. The defendant remained inside the building until approximately 2:21 p.m. when he exited through the Senate wing doors.

**III.   LEGAL ISSUES BASED ON ANTICIPATED DEFENSES**

Based on the defendant's previous arguments and pre-trial filings, as well as the nature of the evidence in this case, the government anticipates that the defendant may pursue certain defenses at trial.  Legal issues presented by these anticipated defenses, none of which undermines the proof in this case, are previewed below.

> **A.** **The Defendant Need Only Intend to Enter the Restricted Area Knowing That He Did Not Have Lawful Authority to Do So, and the Government Need not Prove that he had Knowledge of the Vice President's Presence.**

The "knowingly" element of 18 U.S.C. 1752 requires the government to prove that the defendant was aware that he entered and remained in a restricted area and that he knew he did so without lawful authority. The evidence at trial will make that showing. Video evidence shows that the defendant observed barricades and snow fencing bearing an "Area Closed" signs. In addition to the defendant's statements, this will prove that the defendant knowingly entered a restricted area.

The defendant may argue that the government is also required to prove that the defendant knew that the Vice President was at the Capitol at the time of his entry or knew the Vice President would return to the Senate chamber following his departure from the grounds. That argument is incorrect. Section 1752 does not require the government to prove that the defendant knew why a "restricted building or grounds" was restricted. The "knowingly" adverb in Section 1752(a) modifies the actus reus in each Count—entering or remaining without lawful authority in Count One (§ 1752(a)(1)), engaging in disorderly or disruptive conduct in Count Two (§ 1752(a)(2))— but does not attach to 18 U.S.C. § 1752(c), which defines the term "restricted building or grounds" in one of three possible ways. How to define a restricted area for purposes of 18 U.S.C. § 1752 has "nothing to do with the wrongfulness of the defendant's conduct," and thus is "not subject to the presumption in favor of scienter." *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019); *see United States v. Bursey*, 416 F.3d 301, 309 (4th Cir. 2005). It therefore follows that Section 1752 does not require the government to prove the defendant knew either that the restricted area on January 6 was restricted because of the Vice President's presence or where within the restricted area the Vice President was.

### B.  U.S. Capitol Police CCTV Surveillance Footage

Admission of footage from USCP's own systems is straightforward. If no stipulation with the defendant is reached, then the government will present a USCP witness to testify to their surveillance system. This witness will be able to explain how the system is used, that it reliably records and depicts the areas where USCP has installed cameras, and the internal characteristics of videos—such as date and time stamps—which allow USCP to identify and retrieve segments of video. Such evidence satisfies the requirement of Fed. R. Evid. 901(b)(4), which allows authentication by way of "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." It also accords with the requirements of Rule 901(b)(9), which allows authentication by "[e]vidence describing a process or system and showing that it produces an accurate result."

### C.  Photo and Video from Others Present at the Capitol

Finally, the government also intends to introduce photos and videos taken by others present in and around the Capitol that day. This includes open-source video from journalists and rioters, including those charged in separate criminal cases for their conduct at the Capitol on January 6, 2021.

The government anticipates authenticating these videos in multiple ways. First, any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence, including but not limited to the person who took the photograph or video. *See* Fed. R. Evid. 901(b)(1). Here, that includes any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted and testify that they appear to fairly and accurately show the events that took place. *See, e.g., Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003); *see also United States v.*

*Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988) (citing, *e.g., Simms v. Dixon*, 291 A.2d 184 (D.C. 1972); E. Cleary, McCormick on Evidence (3d ed. 1984) at 671).

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting that event.  As explained, the bar for establishing authenticity sufficient to admit evidence to the jury is very low: only a *prima facie* showing that the evidence is what the government purports it to be—namely, photographs and videos of the Capitol siege in progress. For that reason, even a witness who was not present during the events depicted can help authenticate an exhibit if they can (1) identify the location(s) depicted in the photograph or video; and (2) establish that the video is generally consistent with their knowledge of events that occurred at that location during the Capitol riot. *See, e.g., Rembert*, 863 F. 2d at 1028 ("Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (*quoting United States v. Stearns,* 550 F.2d 1167, 1171 (9th Cir. 1977)); *United States v. Holmquist*, 36 F.3d 154, 169 (1st Cir. 1994) ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."); *Cf. United States v. Safavian,* 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (authenticating emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions).

Second, authenticated video or photographs can in turn authenticate other, substantially similar videos or photographs of the same scene. *See* Fed. R. Evid. 901(b)(3) (authentication by

comparison with another authenticated specimen); *see. e.g.*, *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th at 1371; *Stearns*, 550 F.2d at 1171-72 (where circumstantial evidence established one photograph's authenticity, it "authenticates the other four pictures as to time"); *Diaz v. County of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) ("Here, the videos can be authenticated through other evidence on the record—namely, other video and photographic evidence of the incident that Green provides."); *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) ("e-mails that are not clearly identifiable on their own can be authenticated under Rule 901(b)(3)," by the jury's comparison with other "emails that already have been independently authenticated").

In another January 6 trial in this district, the court found similar "open-source" evidence to be authentic by comparison under Rule 901(b)(3). *United States v. Rodean*, 1:21-cr-57-TNM, Dkt. 50 (D.D.C. Apr. 20, 2022). In *Rodean*, the court compared screenshots of video from a known source (USCP security footage), which showed the Senate Wing Doors from the inside facing out, with screenshots of video footage taken by an unspecified rioter showing the Senate Wing Doors from the outside looking in. *Id.* at 2. The court noted similar objects depicted in both sets of screenshots: doors of a building flanked by windows, a crowd of rioters near the windows, and a wooden beam sticking through a shattered window. *Id.* The court found these similarities sufficient and granted the government's pretrial motion to find the video taken by the unspecified rioter to be authentic. *Id.* at 6.

Indeed, multiple video and photographic exhibits can provide circumstantial evidence of each other's authenticity, even if none of them is independently authenticated. If testimony were to establish, for example, that multiple open-source videos each showed the same events from different angles, and were obtained from separate sources, it would be highly unlikely that multiple different sources could have created videos or photographs depicting the same event from different

angles, with the same distortion or inaccuracy repeated in each of the videos or photographs from

a different angle.

### D. Jury Nullification

The defendant should be prohibited from making arguments or attempting to introduce

non-relevant evidence that encourages jury nullification. As the D.C. Circuit has made clear:

> "A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a
> "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court,
> while the latter can be, does not create a right out of the power to misapply the law. Such
> verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized
> power."

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).  Evidence that only serves to

support a jury nullification argument or verdict has no relevance to guilt or innocence. *See United*

*States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975); *see also United States v. Funches*,

135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise

inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence

might have encouraged the jury to disregard the law and to acquit the defendant").

The government has identified the following subject areas, which are not relevant to the

issues under consideration by the jury and could serve as an improper invitation for the jury to

nullify its fact-finding and conclusions under the law. The defendant may claim that he has been

unfairly singled out for prosecution because of his political views, and that—at the very least—his

conduct does not merit criminal charges. But a "selective-prosecution claim is not a defense on the

merits to the criminal charge itself, but an independent assertion that the prosecutor has brought

the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456,

463 (1996). Regardless of whether alleged discrimination based on political views is a proper basis

for challenging the indictment—which the defendant has not claimed to date—it has no place in a

jury trial. *See United States v. King*, No. CR-08-002-E-BLW, 2009 WL 1045885, at *3 (D. Idaho Apr. 17, 2009) ("The Court will therefore exclude any evidence or argument as to selective prosecution at trial."); *United States v. Kott*, No. 3:07-CR-056 JWS, 2007 WL 2670028, at *1 (D. Alaska Sept. 10, 2007) (where defendant, in response to government's expressed concern that defendant might use challenged evidence to claim selective prosecution at trial, the defendant "abjured any effort to" to make such a claim, "[t]he court will enforce that promise").

The defendant may face prison time were he to be found guilty in this case. The defendant should not be permitted to arouse the jury's sympathy by introducing any evidence or attempting to argue about the possible sentence in this case. These circumstances have no bearing on the defendant's guilt and invite jury nullification. *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("evidence which has the effect of inspiring sympathy for the defendant or for the victim … is prejudicial and inadmissible when otherwise irrelevant") (internal citation omitted); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C 1963) ("The proffered testimony (which was clearly designed solely to arouse sympathy for defendant) was thus properly excluded.").

### E.  Impermissible Argument to the Jury by Counsel

The defendant filed two pretrial motions based on the First and Fourth Amendment. If both motions are denied by the Court before trial, the defendant's counsel should be expressly prohibited from arguing or implying to the jury to the defendant's constitutional rights were violated so as to avoid confusion of the issues to be decided by the jury.

11

## IV.   CONCLUSION

On January 6, 2021, the defendant joined a mob of demonstrators that entered the restricted area. At trial, the evidence will prove that the defendant acted with knowledge and willfulness when taking those actions on January 6, 2021, and the government will prove his guilt beyond a reasonable doubt.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     /s/ Andrew J. Tesman
Andrew J. Tessman
Assistant United States Attorney
WV Bar No. 13734
District of Columbia - Detailee
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
(304)-345-2200
andrew.tessman@usdoj.gov

/s/ Rebekah Lederer
Rebekah Lederer
Pennsylvania Bar No. 320922
Assistant United States Attorney
U.S Attorney's Office for District of Columbia
601 D St. N.W, Washington, DC 20530
Tel. No. (202) 252-7012
Email: rebekah.lederer@usdoj.gov