**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 22-CR-64 (RBW)** |
| **v.** | : | |
| | : | |
| **LLOYD CASIMIRO CRUZ, JR.,** | : | |
| | : | |
| **Defendant** | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Lloyd Cruz, Jr. to 12 months' incarceration, the middle of the guideline range as calculated by the government and the United States Probation Office, one year of supervised release, 60 hours of community service, and $500 in restitution.

**I.        Introduction**

Defendant Lloyd Cruz, Jr., a 40-year-old, four-time recidivist felon, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

_____

[1] Although the Statement of Offense in this matter, filed on January 13, 2023, (ECF No. 73 at ¶ 6) reflects a sum of more than $1.4 million dollars for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

1

Defendant Cruz has been found guilty of violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). As explained herein, a significant sentence of incarceration is appropriate in this case because of his criminal history and because he: (1) video-recorded clear signs that the building was closed to the public, including Capitol police in riot gear clashing with rioters and using crowd control measures such as tear gas and rubber bullets, as he made his way from the Lower West Terrace to the Upper West Terrace; (2) entered the U.S. Capitol building through the Senate Wing Door just two minutes after the initial breach at that location; (3) initially lied to the FBI about going inside the Capitol and minimized his conduct during voluntary interviews; (4) has attempted to raise money from his status as a Capitol riot defendant; (5) has spread false information about what occurred on January 6, 2021; and (6) has failed to demonstrate acceptance of responsibility or express remorse for his actions.

The Court must also consider that Cruz's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Cruz's crimes support a sentence of 12 months' incarceration, one year of supervised release, 60 hours of community service, and $500 in restitution in this case.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 73 (Statement of Offense), at 1-7.

*Defendant Cruz's Role in the January 6, 2021 Attack on the Capitol*

On January 3, 2021, Cruz travelled from his residence in Polo, Missouri to Washington, D.C. by car with two other people. ECF 73 ¶ 8. The purpose of Cruz's trip to Washington, D.C., was to protest Congress' certification of the Electoral College vote. *Id*. Prior to his travel to Washington, D.C., Cruz had posted on social media that there was fraud in the 2020 Presidential election and that he planned to attend the "Stop the Steal" rally on January 6, 2021, to contest the results of the election. *Id*. ¶ 9.

On January 6, 2021, Cruz attended the former President's rally and then walked to the Capitol after the rally. *Id*. ¶ 10.  Cruz filmed the rally with his personal GoPro camera and continued to film as he walked to the Capitol.[2] *Id*.

Upon arrival at restricted Capitol grounds, Cruz joined a mob of rioters that had gathered on the West Plaza, by a Media Tower constructed for the upcoming inauguration. *Id*. ¶ 11. While there, he observed – and video-recorded – police officers deploying flash bangs and chemical spray to disperse the crowd of rioters. *Id*. Image 1, below, is a screenshot from Cruz's GoPro (Exhibit 3 - GH010089.mp4 – timecode 0:58) showing rioters up against a police line and the smoke/mist from crowd control measures in the air:

---

[2] The government will provide Cruz's personal GoPro videos from January 6, 2021 to the Court and counsel via file-sharing service prior to the sentencing hearing.



*Image 1*

At approximately 2:10 p.m., as rioters were fighting with police on restricted Capitol grounds, Cruz followed the mob that had broken through police lines and moved up the stairs to the Upper West Terrace. ECF 73 ¶ 11. As Cruz ascended the stairs to the Upper West Terrace, Cruz exclaimed, "We broke down the gate. We broke through the gate" (Exhibit 3 – timecode 5:55) and "I'm going inside!" (Exhibit 3 – timecode 6:50). Images 2-3, below, are screenshots from Cruz's GoPro (Exhibit 3– timecode 2:23-5:59) showing Cruz's path from the West Plaza to the Upper West Terrace with the mob and past a "Area Closed" barricade:



*Image 2*



*Image 3*

While on the Upper West Terrace near the Senate Wing Door, he video-recorded rioters attempting to break windows by the Senate Fire Door/Parliamentarian Door at about 2:12 p.m. ECF 73 ¶ 11. Image 4, below, is a screenshot from Cruz's GoPro (Exhibit 3 - timecode 7:29) showing a rioter attempting to break windows (circled in yellow):



*Image 4*

As Cruz approached the Senate Wing Door, the mob chanted "Who's House? Our House!" and Cruz witnessed rioters entering the building through broken windows. ECF 73 ¶ 11. Cruz's GoPro recorded the audible alarm from the Senate Wing Door, which also had visible broken glass panes, as he approached the door and entered the building (Exhibit 3 - timecode 8:16). Images 5-6, below, are screenshots from Cruz's GoPro (Exhibit 3 – timecode 8:08-8:19) showing rioters climbing through broken windows shortly before Cruz entered the building through the Senate Wing Door:



*Image 5*



*Image 6*

Cruz entered the Capitol building through the Senate Wing Door at 2:14 p.m., about one to two minutes after the initial breach at that location. ECF 73 ¶ 11. Cruz roamed the building with rioters as they chanted in the halls, and he entered the Crypt at about 2:17 p.m. *Id*. ¶ 12. Cruz left

through the Senate Wing Door at approximately 2:20 p.m. *Id*. He recorded his passage into and through the Capitol building on his personal GoPro camera (Exhibits 4-5). *Id*.

After leaving the Capitol building, Cruz recorded a GoPro video at the D.C. Metro station, in which he commented that he had to clean his face because he got "pepper sprayed" (Exhibit 9 - GH040095.MP4 – timecode 1:14). *Id*. ¶ 13.

*Defendant's May 19, 2021 FBI Interview*

Prior to being charged in this case, Cruz participated in several voluntary interviews with the FBI between May 19, 2021 and October 25, 2021. In the interviews, Cruz admitted to being at the U.S. Capitol in Washington, D.C. on January 6, 2021. When he was initially interviewed on May 19, 2021, Cruz told the agents that he observed Capitol personnel removing the lower barriers to allow people to walk closer to the building. He stated that he observed the upper barriers being pushed over and moved out of the way by people who, from their dark clothing and behavior, Cruz assumed were affiliated with Antifa. He observed Capitol police in riot gear on the Capitol steps and the deployment of crowd control measures, including tear gas and rubber bullets.

Cruz told the FBI that he went onto Capitol grounds with the intent of helping anyone who was injured.[3] He stated that he went up the steps to the Upper West Terrace and observed a window being broken. However, Cruz told the interviewing agents that he did not go inside the building. Cruz stated that he recorded footage with his GoPro and agreed to provide it to the FBI. He told the FBI that he loved the U.S.A. and believed the damage at the Capitol was caused by Antifa members masquerading as Trump supporters to make conservatives look bad.

---

[3] Cruz repeated this statement in his solicitations for donations. However, in a subsequent interview with the FBI on October 25, 2021, Cruz stated that he entered the Capitol for the purpose of documenting the event with his GoPro camera.

In the initial interview, Cruz was admonished that lying to the FBI was a violation of 18 U.S.C. § 1001, and he was then questioned again whether he ever entered the U.S. Capitol Building on January 6, 2021. Cruz responded he did not recall going inside the Capitol, but explained he suffered a traumatic brain injury during a kidnapping that affected his memory. He said that he sometimes did not remember blocks of time, and sometimes had false memories of events that did not occur.

*Defendant's June 1, 2021 FBI Interview*

Two weeks later, on June 1, 2021, FBI agents met with Cruz at his home in Polo, Missouri. Cruz provided the FBI with the GoPro footage from January 6, 2021. He told the FBI that reviewing the GoPro videos prior to the FBI's arrival that day reminded him that he entered the U.S. Capitol Building on January 6, 2021. Cruz stated that, prior to this meeting, he had also seen himself on surveillance footage from inside the U.S. Capitol Building posted on the Internet. Cruz reviewed a map with data points depicting his path through the inside of the Capitol building and told the agents that he believed the depicted path was accurate.

*Social Media Posts*

After exiting the Capitol building, Cruz posted to Facebook on January 6, 2021 that he was "safe" and he also posted a video he recorded on restricted Capitol grounds (Exhibit 10).

Later, after being charged in this case, Cruz started a Twitter account "Cruz 82" (@CruzFamily13) in which he posted repeated solicitations for donations, and politically charged content, including conspiracy theories about what occurred on January 6.[4] There are also several posts related to this case in which Cruz minimized his conduct on January 6. Image 7, below, is a screenshot of one of Cruz's Twitter posts minimizing his own conduct:

---

[4] https://twitter.com/CruzFamily13/



*Image 7*

In the days leading up to his trial, Cruz repeatedly posted statements minimizing his conduct. On January 7, 2023, he reposted another user's post, stating "[Cruz] … is facing 2 years in prison for the simple act of walking into the Capitol on Jan 6th and walking out." Cruz also retweeted an appearance he made on the Fox News Channel's Special Report with Bret Baier in a segment on the Capitol riots shortly before his January 13, 2023 trial date.[5] In the segment, Cruz spoke about his case, stating, "Once I got to where the cops had it blocked off, that's when I went ahead and turned around because there was so much yelling, screaming, it was so crowded …."

Since Cruz was convicted in a stipulated bench trial on January 13, 2023, and continuing to the present day, Cruz has continued to post statements minimizing the Capitol riot. Cruz's posts include conspiracy theories that Cruz would know from his own experience are false, such as that the rioters were "let in" to the building by police and the Capitol riot was a "set up." Image 8, below, is a screenshot from Cruz's Twitter account, posted on January 30, 2023 – two weeks after being convicted in this case – "never forget we were set up"; "you can ask yourself if you will be willing to stand up for a better life"; "January 6 was a big lie"; and "they were let in":

---

[5] https://twitter.com/i/status/1611826538281926661



**Cruz 82** ✓ @CruzFamily13 · Jan 30
#jan6th
Never forget we were set up.
We stood up for our country.
So many people are losing the fight.
We all need more help.
Any amount will help.
You can ask yourself if you will be willing to stand up for a better life?
givesendgo.com/G39ZD?utm_sour…



*Image 8*

To this day, Cruz maintains a "GiveSendGo" donation page in which he makes blatantly

false statements about his conduct on January 6, 2021. On the page, Cruz states:

> … On January 6th, 2021, I wanted to support President Trump so I went to
> DC. We went to the rally and then afterward followed everyone peacefully to the
> capital. On our way there my friends and I saw some food trucks and we started to
> go to them. That is when I heard explosions and I told them to stay there while I
> went to see if I could help anyone who might have gotten hurt. When I got there
> there was so much going on then I started to follow people going up the stairs thru
> the door and into the capital.

I followed but did not see any signs saying NO TRESPASSING, or barriers, and DID NOT touch anything. I walked in and walked around. When the police officers in the hall had it blocked I turned around and went back outside. I didn't remember much because my mind was trying to focus and started to block out a lot of what was going on.

Well months passed then the FBI came and questioned me and I told them what I could remember and they said because I corroborated I should be good to go. Months later they called me again and told me I had to turn myself in. I was being charged after all. Well, I did and was appointed a public defender but she was trying to get me to plead out on my first time talking to her. I worked too hard to make my family whole and found John Pierce who is now working with me.

I am not asking for a penny more than is needed for fighting for my freedom and for expenses for that is needed for travel for court ordered appointments.

Any money left over I want to donate to others who Mr. Pierce is representing.

Please help with anything you can I am looking at 2 years for only walking around the Capitol.

There were no signs nor no one saying I couldn't be in there. Please help

If you want you can also cash app or Venmo me also

The donation page states that Cruz has raised nearly $10,000.

Most recently, Cruz has been attempting to raise money by starting a "Cruz for Victory" "J6 Truth Ride" motorcycle ride from Kansas City to Washington, D.C. in relation to his sentencing hearing on May 2, 2023. On a daily basis, Cruz posts repeated audio and written statements minimizing his conduct on January 6 and claims to be a victim, stating that he is unfairly being prosecuted because he is a "Trump supporter" and a "conservative." Image 9, below, is a screenshot from Cruz's Twitter account from April 24, 2023:



↻ Cruz 82 Retweeted

**Raquel Okyay** 🎗
@RQPoliticalBlog

...

Meet Mr. & Mrs. Cruz: They have five children together and they will hit their 9th wedding anniversary on July 8. Their lives were completely turned upside down after Jan. 6.

Lloyd Cruz fiercely loves America and felt compelled to peacefully attend the Jan. 6 rally at the Capitol in support of President Trump and in support of the American people. Each one of us have the right to voice our concerns to our elected government when they are doing things that we might disapprove of. This is our American birthright. This is what the Patriots have fought and died for. No president, judge, congress, corporate elite or media outlet can take that away from us.

Lloyd Cruz did nothing wrong. He walked into an open door at the Capitol. That's it. He didn't hurt anyone. He didn't damage any property. He was disrespectful to no one. Lloyd Cruz is simply an American being an American. His government elites abandoned him. They didn't care who he was. They didn't care about his family. They don't care about his very life. Lloyd was arrested and convicted of two minor Misdemeanor trespassing charges. Now he's facing two years in prison in front of a D.C. judge.

To raise awareness to the plight of Jan. 6 defendants, Tuesday morning, Lloyd Cruz will be traveling by Harley east from Kansas City, MO to Washington DC for sentencing. He is telling his story to anyone willing to listen. You can follow his trip to DC here: cruz-to-victory.com Kindly share and spread the word and please pray to God that He will help Lloyd Cruz in this journey. #UnitedWeStand

*Image 9*

*The Charges and Stipulated Bench Trial*

On February 25, 2022, the United States charged Cruz by criminal complaint with violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). On

February 28, 2022, law enforcement officers arrested him at the U.S. Courthouse in Kansas City, Missouri. On March 4, 2022, the United States charged Cruz by a two-count Information with violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). On January 13, 2022, Cruz was convicted of both charges after a stipulated bench trial.

### III. Statutory Penalties

Cruz now faces a sentencing on one count of violating 18 U.S.C. § 1752(a)(1) and one count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the U.S. Probation Office, he faces up to 18 months of imprisonment and a fine of up to $5,000. He must also pay restitution. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. According to the PSR, the U.S. Probation Office calculated Cruz's adjusted offense level under the Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | 4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | +2 |
| Total Adjusted Offense Level | 6 |

*See* PSR at ¶¶ 28-40.

The U.S. Probation Office calculated Cruz's criminal history as a category V. PSR at ¶ 46. Accordingly, with a total adjusted offense level at 6, and a criminal history category of V, the corresponding Guidelines imprisonment range is 9-15 months. PSR at ¶¶ 90-91.[6]

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

**IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 12 months' incarceration, one year of supervised release, 60 hours of community service, and $500 in restitution.

**A.  The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while

---

[6]  When there are multiple counts of conviction, and where the guideline range is higher than the statutory maximum for any one count, the court may impose consecutive or partially consecutive sentences on more than one count to impose a total sentence of confinement that is within the guideline range. *See* U.S.S.G. §5G1.2(d).

staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 571 F.Supp.3d 1, 8 (D.D.C. 2021). While assessing Cruz's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Cruz, the absence of violent or destructive acts is not a mitigating factor. Had Cruz engaged in such conduct, he or she would have faced additional criminal charges.

An important factor in Cruz's case is how and when he entered the Capitol building. Cruz joined a violent mob that stormed the U.S. Capitol building. He observed all the signs that would have indicated to anyone that the building was off limits to the public on January 6, 2021, including observing Capitol police in riot gear clashing with the violent mob and the deployment of tear gas and rubber bullets to keep the mob away from the building. He could have walked away and removed himself from the riot. But he proceeded and moved with the violent mob from the West Plaza to the Upper West Terrace. As he was ascending the steps to the Upper West Terrace, Cruz exclaimed, "We broke down the gate. We broke through the gate" (Exhibit 3 – timecode 5:55) and "I'm going inside!" (Exhibit 3 – timecode 6:50). He saw rioters breaking and climbing through windows. He entered the building through the Senate Wing Door just a minute or two after it was breached and where an audible alarm was blaring.  He roamed around the inside of the Capitol building for approximately six minutes. He was, by all objective measures, an enthusiastic participant in the violent mob that stormed the Capitol on January 6, 2021.

Accordingly, the nature and the circumstances of this offense establish the clear need for a significant sentence of incarceration in this matter.

### B.  The History and Characteristics of Cruz

Cruz has a significant criminal history that places him in criminal history category V. He has four felony convictions. He has a history of failing to pay the fines and costs associated with his convictions. His criminal history includes:

- In 2004, Cruz was convicted of two felony counts of distribution of a controlled substance and sentenced to four years' probation. Separately in 2006 and 2007, Cruz had his probation revoked and he was sentenced to four years' imprisonment. He was ordered to pay a total of $4,665.20 in fines, costs, and fees, and has only paid $52.08 toward the amount owed. PSR ¶ 42.

- In 2005, Cruz was convicted of a felony count of possession of forged instruments and sentenced to two years' intensive supervision. In 2007, his supervision was revoked, and he was sentenced to two years' imprisonment. He was ordered to pay a total of $1,752.50 in fines, costs, and fees, and has paid no money toward the amount owed. PSR ¶ 43.

- In 2007, Cruz was convicted of a felony count of theft\receiving stolen property ($5,000-$15,000) and sentenced to four years' imprisonment. He was ordered to pay $500.50 in fines, costs, and fees, and has paid no money toward the amount owed. PSR ¶ 44.

- In 2007, Cruz was convicted of a felony count of forgery of a check/commercial instrument and sentenced to four years' imprisonment. PSR ¶ 45.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

17

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to

convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

One of the most important factors in Cruz's case is his complete failure to take responsibility for his actions. Despite his conduct on January 6 and his convictions in this case, Cruz continues to attempt to spread false information about the Capitol riot on the Internet, claiming that "They were let in" (i.e., the Capitol Police admitted the rioters into the Capitol) and "January 6 was a lie." He goes so far as to spread false information about his own case, claiming on his still-active "GiveSendGo" page that he did not see any signs saying "no trespassing" or any barriers, and that there "were no signs nor no one saying I couldn't be there."

Cruz's attempts to falsely portray himself as some sort of victim demonstrate his lack of acceptance of responsibility for his crimes. Cruz is not a victim. The government did not *do* anything to him—he bears responsibility for his own criminal conduct. His crimes on January 6 were a result of his own conscious, deliberate decisions, and he now faces sentencing for those decisions. Cruz is in his present situation because he decided to join a violent mob intent on overturning an election result with which he personally disagreed. He knowingly and voluntarily participated in an unprecedented violent assault on our democracy. His continued attempts to garner sympathy based on false statements about his own conduct, false statements about what happened at the Capitol on January 6, and statements portraying himself as a victim are repugnant.

Additionally, Cruz initially lied to the FBI when he was interviewed on May 19, 2021. He told the FBI he was at the Capitol but did not go inside. He stated that he was on Capitol grounds to help injured people. Cruz's own GoPro footage refutes those false statements. As he was

ascending the steps to the Upper West Terrace, Cruz exclaimed, "We broke down the gate. We broke through the gate" (Exhibit 3 – timecode 5:55) and "I'm going inside!" (Exhibit 3 – timecode 6:50). Cruz only changed his story a couple weeks later because he knew he had been caught in a lie. He observed video of himself inside the Capitol on the Internet, and he realized that the GoPro footage he was turning over to the FBI would show him inside the Capitol. Cruz's scheme to initially conceal the fact of his entry into the Capitol from the FBI demonstrates he has had an understanding and appreciation that his actions on January 6, 2021 violated the law, which makes his conscious decisions to continue to minimize his conduct and spread false information about the Capitol riot all the more troubling.

As noted above, this is not Cruz's first involvement with the criminal justice system. He has four prior felony convictions and has failed to pay the fines and costs ordered by the court in those cases. His criminal history combined with his complete failure to accept responsibility for his actions demonstrates that Cruz has no respect for the law and specific deterrence for this defendant is greatly needed in this case.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[7] This Court must sentence Cruz based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[7] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Cruz has been found guilty of Count One of the Information, charging him with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). This offense is a Class A misdemeanor. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct".  So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity.

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every

sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").  If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

Although the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Simon*, 21-cr-346 (BAH**)**, the defendant pled guilty to a single count of violating 18 U.S.C. 1752(a)(2). Simon traveled from Maine to Washington D.C., where he attended former President Trump's rally before marching to the U.S. Capitol. On the Lower West Terrace Simon briefly joined other rioters in pushing a bicycle rack into a line of officers. He then made his way to the Upper West Terrace where he entered the Capitol through the Senate Wing

Door at 2:14 p.m. Once inside, Simon made his way to the Crypt and to the Rotunda. At each location he yelled and chanted in the direction of the police and recorded video of the mob's engagements with the police. After the riot, he lied to the FBI. The court sentenced Simon to 8 months' incarceration, the bottom of the guideline range of 8 to 12 months.  However, unlike Cruz, Simon accepted responsibility and pled guilty, and unlike Cruz, Simon was in criminal history category I. Given these differences, a higher sentence is warranted in this case.

In *United States v. Rivera*, 21-cr-060-CKK, the defendant was convicted of violating 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§ 5104(e)(d)(D) and (e)(2)(G) after a bench trial. Rivera livestreamed his presence in the Capitol on Facebook and urged his followers who were watching to share his livestream with their friends and followers, and he proclaimed he was "about to take [his] ass to the middle of the [United] State[s] Capitol." *See* Sentencing Memorandum, *Rivera*, id., ECF No. 69, pg. 5. He announced to his followers that MPD officers were firing pepper spray at the rioters, *id.* at 7, and saw rioters climbing a wall and shouted at them, "there's an easier way up!" *Id*. He engaged in no violence in the Capitol and left after approximately 20 minutes. Rivera faced a guideline range of 6 to 12 months, as calculated by the government, and the Court sentenced Rivera to eight months in prison. Unlike Rivera, who had no prior record, Cruz has multiple prior convictions and is in criminal history category V, and accordingly, a higher sentence is warranted.

In *United States v. Alford*, 21-cr-263-TSC, the defendant was convicted of four misdemeanors following a jury trial.  Alford posted on Facebook in the days and weeks leading up to January 6, expressing his belief that the 2020 presidential election was rigged, including a meme, "By Bullet or Ballot[,] Restoration Of the Republic Is Coming."  Alford entered through the Upper House Door, which had been broken open by earlier rioters. Police in riot gear were

nearby and an alarm blared throughout Alford's time in the Capitol. While MPD officers attempted to remove rioters from the building, Alford continued on. Alford engaged in no violence in the Capitol and was inside for approximately 14 minutes. The court sentenced to Alford to 12 months' incarceration followed by one year of supervised release. But unlike Cruz, Alford had no prior record. Accordingly, a higher sentence is warranted for Cruz.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

Under 18 U.S.C. § 3556, a sentencing court must determine whether and how to impose restitution in a federal criminal case. Because a federal court possesses no "inherent authority to order restitution," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), it can impose restitution only when authorized by statute, *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). Two general restitution statutes provide such authority. First, the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18

U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *Papagno*, 639 F.3d at 1096. Second, the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA. *Papagno*, 639 F.3d at 1096. The applicable procedures for restitution orders issued and enforced under these two statutes is found in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3556 (directing that sentencing court "shall" impose restitution under the MVRA, "may" impose restitution under the VWPA, and "shall" use the procedures set out in Section 3664).

Both the VWPA and MVRA require that restitution "be tied to the loss caused by the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 418 (1990) (interpreting the VWPA). Both statutes identify similar covered costs, including lost property and certain expenses of recovering from bodily injury. *See Papagno*, 639 F.3d at 1097-97; 18 U.S.C. §§ 3663(b), 3663A(b). Finally, under both the statutes, the government bears the burden by a preponderance of the evidence to establish the amount of loss suffered by the victim. *United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019).

In deciding whether to impose restitution under the VWPA, the sentencing court must take account of the victim's losses, the defendant's financial resources, and "such other factors as the court deems appropriate." *United States v. Williams*, 353 F. Supp. 3d 14, 23-24 (D.D.C. 2019) (quoting 18 U.S.C. § 3663(a)(1)(B)(i)). By contrast, as noted above, the MVRA applies only to certain offenses, such as a "crime of violence," § 3663A(c)(1)(A), or "Title 18 property offenses 'in which an identifiable victim . . . has suffered a physical injury or pecuniary loss,'" *Fair*, 699 F.3d at 512 (citation omitted), but it requires imposition of full restitution without

respect to a defendant's ability to pay.[8]

Because this case involves the related criminal conduct of hundreds of defendants, the Court has discretion to: (1) hold the defendants jointly and severally liable for the full amount of restitution owed to the victim(s), *see* 18 U.S.C. § 3664(f)(1)(A)(requiring that, for restitution imposed under § 3663, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant"); or (2) apportion restitution and hold the defendant and other defendants responsible only for each defendant's individual contribution to the victim's total losses. 18 U.S.C. § 3664(h). That latter approach is appropriate here.

More specifically, the Court should require Cruz to pay $500 in restitution for his convictions on Counts One and Two. This amount fairly reflects Cruz's role in the offense and the damages resulting from his conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, five hundred dollars has consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where the defendant was not directly and personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

## VI.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Cruz to 12 months' incarceration, one year of supervised release, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by

---

[8] Both statutes permit the sentencing court to decline to impose restitution where doing so will "complicat[e]" or "prolong[]" the sentencing process. *See* 18 U.S.C. §§ 3663(a)(1)(B)(ii), 3663A(c)(3)(B).

26

imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Andrew J. Tessman*
ANDREW J. TESSMAN
Assistant United States Attorney
District of Columbia – Detailee
West Virginia Bar No. 13734
300 Virginia Street
Charleston, WV 25301
(304) 345-2200
Andrew.Tessman@usdoj.gov

## CERTIFICATE OF SERVICE

On this 26th day of April, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

By:   */s/ Andrew J. Tessman*
      ANDREW J. TESSMAN
      Assistant United States Attorney
      District of Columbia – Detailee
      West Virginia Bar No. 13734
      300 Virginia Street
      Charleston, WV 25301
      (304) 345-2200
      Andrew.Tessman@usdoj.gov